UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J & J SPORTS PRODUCTIONS, INC., ) | Case No.: 1:12-cv-00737-AWI-JLT |
| Plaintiff, ) | FINDINGS AND RECOMMENDATIONS GRANTING IN PART PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT |
| v. ) | |
| ANGEL SULLIVAN, individually and d/b/a MOVICELL LATINO BOOST, ) | (Doc. 10) |
| Defendant. ) | |

J & J Sports Productions, Inc. ("Plaintiff") seeks the entry of default judgment against Defendant Angel Sullivan, individually and doing business as Movicell Latino Boost ("Defendant"). (Doc. 10). Defendant has not opposed this motion.

Having reviewed the motion and supporting documents, the Court found the matter suitable for decision without an oral hearing pursuant to Local Rule 230(g). Therefore, the matter was taken under submission on November 28, 2012. (Doc. 14). For the following reasons, the Court recommends Plaintiff's motion for default judgment be **GRANTED IN PART**.

**I.      Procedural History**

On May 4, 2012, Plaintiff filed its complaint against Defendant. Plaintiff alleged the company possessed "the exclusive nationwide commercial distribution (close-circuit) rights to *Manny Pacquiao v. Shane Mosley, WBO Welterweight Championship Fight Program*," which was broadcast on

1

Saturday, May 7, 2011 ("the Program"). (Doc. 1 at 4). Plaintiff alleges Defendant failed to purchase a sublicense, and unlawfully intercepted the Program signal for exhibition in Movicell Latino Boost. *Id.* at 4-5. Accordingly, Plaintiff alleges Defendant violated the Federal Communications Act of 1934, arising under 47 U.S.C. §§ 605, and the Cable & Television Consumer Protection and Competition Act of 1992, arising under 47 U.S.C. § 533. (Doc. 1 at 406). In addition, Plaintiff alleges Defendant is liable for wrongful conversion of property and unfair business practices in violation of Cal. Bus. & Prof. Code § 17200. *Id.* at 7-8.

Defendant was properly served with the complaint on July 30, 2012 (Doc. 5), yet failed to respond within the time prescribed by the Federal Rules of Civil Procedure. Upon Plaintiff's request, default was entered against Defendant on September 18, 2012. (Docs. 7-8) Plaintiff filed the application for default judgment now before the Court on October 12, 2012. (Doc. 10). Despite being served with all documents from the complaint to Plaintiff's request for entry of default and motion for default judgment, Defendant has failed to participate in this action.

## II.     Legal Standards for Default Judgment

The Federal Rules of Civil Procedure govern the entry of default judgment. When default was entered because "a party against whom a judgment for relief is sought has failed to plead or otherwise defend," the party seeking relief may apply to the court for a default judgment. Fed. R. Civ. P. 55(a)-(b). Upon the entry of default, well-pleaded factual allegations regarding liability are taken as true, but allegations regarding the amount of damages must be proven. *Pope v. United States*, 323 U.S. 1, 22 (1944); *see also Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977). In addition, "necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of North Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)).

Granting or denying a motion for default judgment is within the discretion of the Court. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). The entry of default "does not automatically entitle the plaintiff to a court-ordered judgment. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F.Supp.2d 1172, 1174 (C.D. Cal 2002), *accord Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986). The Ninth Circuit opined:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). As a general rule, the issuance of default judgment is disfavored. *Id.* at 1472.

### III.   Plaintiff's Factual Allegations

The factual assertions of Plaintiff are taken as true because default has been entered against Defendant. *See Pope*, 323 U.S. at 22. Plaintiff alleges the company acquired the exclusive domestic commercial distribution rights to the Program and, pursuant to that contract, entered into sublicensing agreements with various commercial entities throughout North America to broadcast the Program within their establishments. (Doc. 1 at 4).

Plaintiff asserts Defendant is "an owner, and/or operator, and/or licensee, and/or permittee, and/or person in charge, and/or an individual with dominion, control, oversight and management of the commercial establishment doing business as Movicell Latino Boost..." (Doc. 1 at 3). Plaintiff alleges Defendant engaged in an act of signal piracy by broadcasting the Program in his store without purchasing a proper sublicense. *Id.* at 4. For this act, Plaintiff alleged violations of 47 U.S.C. §§ 553 and 605, conversion, and a violation of the California Business and Professions Code. *Id.* at 4-7. However, in its application for default judgment, Plaintiff requested damages for the violation of 47 U.S.C. § 605 and conversion. (*See* Doc. 10-1). Therefore, the Court will address only these claims.

### IV.   Application of *Eitel* Factors

Applying the factors articulated by the Ninth Circuit in *Eitel*, the Court finds factors weigh in favor of granting Plaintiff's motion for default judgment.

#### A.   Prejudice to Plaintiff

The first factor considers whether the plaintiff would suffer prejudice if default judgment is not entered, and potential prejudice to a plaintiff militates in favor of granting a default judgment. *See Pepsico, Inc.*, 238 F.Supp.2d at 1177. In general, where default has been entered against a defendant, a plaintiff has no other means by which to recover damages. *Id.*; *J & J Sports Prods. v. Rodriguez*,

3

2010 U.S. Dist. LEXIS 20288, at * 7 (E.D. Cal. March 5, 2010). Therefore, the Court finds Plaintiff would be prejudiced if default judgment is not granted.

### B. Merits of Plaintiff's claims and sufficiency of the complaint

Given the kinship of these factors, the Court considers the merits of Plaintiff's substantive claims and the sufficiency of the complaint together. *See J & J Sports Productions v. Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 4 (E.D. Cal. May 17, 2010). The Ninth Circuit has suggested that, when combined, these factors require a plaintiff to "state a claim on which the plaintiff may recover." *Pepsico, Inc.*, 238 F.Supp.2d at 1175 (citing *Kleopping v. Fireman's Fund*, 1996 U.S. Dist. LEXIS 1786, at *6 (N.D. Cal. Feb. 14, 1996)).

*Claim arising under 47 U.S.C. § 605*

The Federal Communications Act of 1934 ("Communications Act") prohibits "unauthorized use of wire or radio communications, including interception and broadcast of pirated cable or broadcast programming." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *3, n. 3. In pertinent part, the Communications Act provides, "No person not being authorized by the sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." 47 U.S.C. § 605(a). Thus, the Communications Act claim requires Plaintiff to demonstrate Defendant intercepted a wire or radio program and published it without permission, and Plaintiff was the party aggrieved by Defendant's actions. 47 U.S.C. § 605(e)(3)(A).

A "person aggrieved" includes a party "with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6). In the Complaint, Plaintiff asserted that it was granted the exclusive, nationwide commercial distribution rights to the Program. (Doc. 1 at 4). Consequently, the Court finds Plaintiff was the party aggrieved under the Communications Act.

Plaintiff acknowledges that it is unable to "isolate the precise method of interception the Defendant used" to receive the Program. (Doc. 10-1 at 8). Similarly, in *Hernandez*, Plaintiff was unable to identify the nature of the transmission.[1] As noted by the Court, "Plaintiff's inability to

---

[1] The plaintiff in the matter now before the Court was the plaintiff in *Hernandez*, and represented by the same attorney, Thomas P. Riley. *See* No. 2:09-cv-3389 GEB KJN.

allege the precise nature of the intercepted transmission in this case . . . raises a question regarding the scope of 47 U.S.C. § 605(a) and the sufficiency of plaintiff's claim under that provision." *Hernandez*, 2010 U.S. Dist. LEXIS 48191, at *10. Regardless of Plaintiff's inability to determine the means of the signal transmission, Plaintiff has provided evidence that the Program was broadcast in Defendant's store although he did not purchase a commercial license for the broadcast, because an investigator witnessed the Program broadcast. (Doc. 10-3 at 2).

Therefore, Plaintiff has established the elements of a claim under the Communications Act, because Plaintiff was a party aggrieved, and Defendant intercepted the Program and published it without Plaintiff's permission.

*Conversion*

As recognized by the Ninth Circuit, conversion has three elements under California Law: "ownership or right to possession of property, wrongful disposition of the property right and damages." *G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*, 958 F.2d 896, 906 (9th Cir. 1992); *see also Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581 (2005). Possession of the "[e]xclusive right to distribute a broadcast signal to commercial establishments constitutes a 'right to possession of property' for purposes of conversion." *G & G Closed Circuit Events v. Saddeldin*, 2010 U.S. Dist. LEXIS 77585, at *10 (E.D. Cal. Aug. 2, 2010) (citing *Don King Prods./Kingsvision v. Lovato*, 911 F.Supp. 429, 423 (N.D. Cal. 1995)). Therefore, to state a claim for conversion, Plaintiff is required to have the exclusive ownership of, or the exclusive right to license, the broadcasting of the Program.

Given that Plaintiff established it held the exclusive distribution right, Plaintiff held a "right to possession of property." In addition, Plaintiff demonstrated Defendant engaged in signal piracy by broadcasting the program without a sublicense. *See Phelan*, 2009 U.S. Dist. LEXIS 103626, at *34 (as evidence of distribution rights, the plaintiff provided a contract that on its face granted Plaintiff the exclusive right to license Golden Boy's telecast of a boxing match). Plaintiff alleges the sublicense to broadcast the Program cost $2,200. (Doc. 10-3 at 20). Consequently, Plaintiff has established damages, and has stated a claim for conversion against Defendant.

///

C.     Sum of money at stake

In considering this factor, the Court "must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Pepsico, Inc.*, 238 F.Supp.2d at 1176.  Here, Plaintiff prays for statutory damages of $110,000 for the willful violation of 47 U.S.C. § 605.  This amount represents the maximum amount Plaintiff would be permitted to recover under the statute, including enhanced damages.  In addition, Plaintiff seeks compensatory and punitive damages for Defendant's tortuous conversion of Plaintiff's property.  Plaintiff notes Defendant would have been required to pay only $2,200 to broadcast the program at the store, but Plaintiff asserts nominal damages have proven insufficient to combat piracy, and Defendant should be required to pay the statutory maximum.  (Doc. 10-1 at 19-20).  Thus, Plaintiff seems to concede that amount of damages requested is not proportional to Defendant's conduct.

Given the substantial amount of money at stake, this factor could weigh against the entry of default judgment.  *See, e.g., Joe Hand Promotions v. Streshly*, 655 F.Supp.2d 1136 (S.D. Cal. 2009) (proposed award amount of $100,975 was "manifestly excessive under existing law"); *J & J Sports Productions. v. Cardoze*, 2010 U.S. Dist. LEXIS 74606, at * 12-13 (N.D. Cal. July 9, 2010) ("a large sum of money at stake would disfavor default damages," such as damages totaling $114,200); *see also Board of Trustees of the Sheet Metal Workers v. Vigil*, 2007 U.S. Dist. LEXIS 83691, at *5 (N.D. Cal. Nov. 1, 2007) ("default judgment is disfavored if there were a large sum of money involved"); *but see Hernandez,* 2010 U.S. Dist. LEXIS 48791, at *15 ("the statutes involved contemplate such an award under certain circumstances," and the factor did not weigh against default judgment).  As discussed below, the Court declines to enter judgment in the amount requested.  Consequently, the factor does not weigh against Plaintiff.

D.     Possibility of dispute concerning material facts

The Court considers also the possibility of dispute as to any material facts in the case. Generally, there is little possibility of dispute concerning material facts because (1) based on the entry of default, the Court accepts allegations in Plaintiff's Complaint as true and (2) though properly served, Defendant has failed to defend his case.  *See Pepsico, Inc.*, 238 F.Supp.2d at 1177.  Therefore, this factor does not weigh against entry of default judgment.

6

     E.     Whether default was due to excusable neglect

Generally, the Court will consider whether Defendant's failure to answer is due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Here, Defendant was served with the Summons, Complaint, and the motion for default judgment. Given these circumstances, it is unlikely that Defendant's actions were the result of excusable neglect. *See Shanghai Automation Instrument Co., Ltd. v. Kuei*, 194 F.Supp.2d 995, 1005 (N.D. Cal. 2001) (finding no excusable neglect because the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion"). Thus, this factor does not weigh against default judgment.

     F.     Policy disfavoring default judgment

As noted above, default judgments are disfavored because "[c]ases should be decided on their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Defendant's failure to answer the Complaint makes a decision on the merits impractical. Consequently, the policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits does not weigh against Plaintiff.

**V.     Damages**

Having accepted the well-pleaded allegations as true, Plaintiff established the elements of a violation of the Communications Act and the tort of conversion. Therefore, Plaintiff is entitled to damages based upon Defendant's act of signal piracy. Plaintiff argues that "it would be impossible to calculate the full extent of the profits lost by Plaintiff and the additional damages sustained by Plaintiff as a result of the Defendant's unlawful actions." (Doc. 10-1 at 9). As noted, Plaintiff requests the statutory maximum, including enhanced damages for violation of the Communications Act, and damages for the tort of conversion, bringing the total requested to $112,200.

Under the Communications Act, a party aggrieved may recover actual damages or statutory damages "not less than $1,000 or more than $10,000, as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II). When a court finds a violation was "committed willfully and for the purposes of direct or indirect commercial advantage or private financial gain," a court may award enhanced damages by increasing the awarded damages up to $100,000.00 for each violation. *Id.* at § 605(e)(3)(C)(ii). The Court has "wide discretion" to determine the proper amount of damages to be awarded. *DirecTV Inc. v. Le*, 267 F. App'x 636 (9th Cir. 2008) (citation omitted).

The Court may consider a number of factors in its determination of the amount of damages, including any promotional advertising by the defendant, the capacity of the establishment, the number of patrons present at the time of the broadcast, the imposition of a cover charge, the number and size of the televisions used for the broadcast, and whether a premium was charged on food or drink. *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951, at * 10-11 (E.D. Cal. Sept. 6, 2011) (citing *Kingvision Pay-Per-View, Ltd. v. Backman*, 102 F.Supp.2d 1196, 1198 (N.D. Cal. 2000)).

Gilbert Tate, Plaintiff's investigator, noted the store did not charge a cover charge, and food and drink were not served at Movicell Latino Boost.[2] (Doc. 10-3 at 2). Mr. Tate noted the Program was displayed on a single, "19 [inch] flat screen" television, located above the counter. *Id.* According to Mr. Tate, the capacity of the store "is approximately 20 people," and he "counted approximately 15 people" while at the location. *Id.* at 2. Two photos attached to his affidavit show customers did not enter the shop, but were served at a counter and the entire establishment was akin to a kiosk. *Id.* Explaining the estimated capacity, Mr. Tate reported the television was situated inside the business but was turned to face outward. (Doc. 12 at 4). Mr. Tate reported further, "[t]here was one person inside the establishment," but he "observed several chairs around the outside of the establishment with [approximately] 15 people watching from the outside in." Given these factors, the Court finds an award of $11,000 is appropriate.[3]

Although Plaintiff seeks separate compensation for the tort of conversion, because Plaintiff chose to receive statutory damages rather than actual damages under the Communications Act, damages for conversion are subsumed into the total of $11,000. *See J &J Sports Productions v. Mannor*, 2011 U.S. Dist. LEXIS 32367, at *7 (E.D. Cal. Mar. 28, 2011) (declining to award damages for conversion because "plaintiff has been sufficiently compensated through the federal statutory

---

[2] The business sold cell phones/cell phone service. (Doc. 10-3 at 2)

[3] Courts in this district have found that the statutory maximum is not an appropriate award for a first-time offender and in the absence of aggravating factors. *See, e.g., Joe Hand Promotions v. Brown,* 2010 U.S. Dist. LEXIS 119435 (E.D. Cal. Oct. 27, 2010) (awarding $4,000 in damages where there were 13-17 patrons present, the program was broadcast on six 60-inch televisions, and there was no premium for food or drink); *J & J Sports Productions, Inc. v. Morales*, 2012 U.S. Dist. LEXIS 30942 (E.D. Cal. March 8, 2012) (awarding $4,400 in statutory damages where the sublicense cost $2,200 for the broadcast that the defendants displayed on three televisions, ranging in size up to 54"); *J & J Sports Productions v. Sorondo*, 2011 U.S. Dist. LEXIS 99951 (E.D. Cal. Sept. 6, 2011) (awarding $3,600 in statutory damages, an amount two times the cost of a sublicense).

scheme" where the award total was $3,200 and the cost of the proper license was $2,200); *J & J Sports Productions v. Bachman*, 2010 U.S. Dist. LEXIS 44884, at *22 (E.D. Cal. May 7, 2010) (declining conversion damages because statutory damages "sufficiently compensate[d]" the plaintiff).

### IV.     Findings and Recommendations

The *Eitel* factors weigh in favor of granting default judgment, and the entry of default judgment is within the discretion of the Court. *See Aldabe*, 616 F.2d at 1092. However, the damages requested are disproportionate to Defendant's actions. Importantly, when determining the amount of damages to be awarded for signal piracy, "distributors should not be overcompensated and statutory awards should be proportional to the violation." *Backman*, 102 F.Supp.2d at 1198. As observed in *Streshly*, Defendant "may be the Blackbeard of pirates, but Plaintiff makes no attempt to portray [him] as such, and to the contrary, the act of piracy attributed to [Defendant] is as routine as they come . . ." *Streshly*, 655 F.Supp.2d at 1139.

Accordingly, the Court recommends the award of $11,000. This amount, which is four times the cost of a proper sublicense for the Program, both compensates Plaintiff for the wrongful act and is a suitable deterrent against future acts of piracy. *See Kingvision Pay-Per-View v. Lake Alice Bar*, 168 F.3d 347, 350 (9th Cir. 2009) (observing that a lower statutory award may deter while not destroying a business).

Based upon the foregoing, **IT IS HEREBY RECOMMENDED**:

1.     Plaintiff's request for damages for the violation of the Communications Act and conversion be **GRANTED** in the amount of $11,000;

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days of the date of service of these Findings and Recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."

///

1  Failure to file objections within the specified time may waive the right to appeal the District
2 Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **December 5, 2012**                     **/s/ Jennifer L. Thurston**
                                                  UNITED STATES MAGISTRATE JUDGE